Oral argument not to exceed 15 minutes per side. Mark Allenbaugh for the appellant. Good morning, Your Honors. Mark Allenbaugh on behalf of Appellant Keelan Harris. If it pleases the Court, may I reserve three minutes for rebuttal? Yes. Thank you. Your Honors, this case comes to this Court by way of the Northern District of Ohio. I represented Mr. Harris at the district court level with respect to an open plea or plead straight up to an indictment, a multi-count indictment involving wire fraud and money laundering. The issue today concerns Mr. Harris's sentencing and there's four points that we've articulated in our briefs. One is the district court miscalculated the loss amount in this case. As a result of that miscalculation, the court also miscalculated the number of victims attributable under the sentencing guidelines to Mr. Harris. The court then failed to also make a finding with respect to a mitigating role adjustment to Mr. Harris under the guidelines. And finally, the 120-month sentence that was imposed in this case was substantively unreasonable in light of the various statistical evidence that we did provide to the district court. So first, with respect to the calculation of loss, the theme of the brief and of this particular case is scope. As the sentencing commission has long held, as well as this court, that in conspiracy cases where there is a loss amount attributable to a number of co-defendants, each co-defendant does not automatically receive the entire loss amount of the conspiracy. Rather, a district court is required to make three particularized findings of fact, the first being the most important and the most critical. And that is the scope to which the defendant agreed with respect to the conspiracy's conduct. And actually, the sentencing commission in the guidelines uses a term of art rather than conspiracy per se. It uses a phrase known as jointly undertaken criminal activity. This has led to a confusion in a number of courts across the country the past few years, which led the commission just recently, this past April, to amend or to clarify the guidelines with respect to relevant conduct in these cases. So again, with respect to a conspiracy, as the commission has said, as this court has said, the conspiracy liability is not the same as culpability under jointly undertaken criminal activity for purposes of sentencing. In other words, a defendant is to be held liable only for the conduct that he or she was directly responsible for with respect to the conspiracy at sentencing. And again, the term conspiracy really is jointly undertaken criminal activity. So with respect to the finding, the three points that a district court must make at sentencing under the rubric of the federal sentencing guidelines and relevant conduct, the first is a particularized finding, as I indicated, as to the scope of the criminal activity. Here, the court failed to make that finding. There is no evidence in the record that the court made that finding during the sentencing hearing, and the government did not argue that particular point in its sentencing memorandum. And I cite the court to United States v. Campbell, 279 F. 3rd, 392. It's a 2002 case, as well as U.S. v. Alvarez, 266 F. 3rd, 587. Why wasn't it enough that the court could make the determination at sentencing that the losses were foreseeable and that your client was involved in those losses and the criminal activity that led to that by preponderance of the evidence? And if the court could correctly make that determination, wouldn't that be enough to uphold this 15.6 million in losses to attribute that to your client? Judge Clay, the answer is no. As this court has held in United States v. Alvarez, 266 F. 3rd, 587, foreseeability alone is insufficient to hold a conspiracy defendant accountable for the actions of the co-conspirators. And the commission has recently clarified that. Well, he has to be shown to have been involved in those losses and that the foreseeability would attach to his own knowledge. And here there's all this evidence of all this money he was spending and how he was involved in the financial transactions. I mean, you're a client, and seemingly that would form the basis for those conclusions by the district court. Those certainly formed the conclusions for the district court with respect to reasonable foreseeability and the fact that my client may have known about these other activities. But as the commission recently has clarified, and as this court has stated prior, that is not enough. That if, as the commission recently clarified, if the conduct was not within the scope of the agreement, but the defendant nonetheless, it was reasonably foreseeable to him, and he knew about it, that still is insufficient. That is not relevant conduct, and that cannot be attributed. So you conclude that this wasn't within the scope of the agreement? Your Honor, what our argument is, is that the court never made that particularized finding. The court was, the district court is required, that's the first step, is to make a particularized finding as to the scope of the agreement and then determine whether it was reasonably foreseeable and whether the defendant knew about it. But it is that scope, it is that finding that is critical here, that the district court did not make. Well, the court thought he was addressing a scope of 15.6 million in losses and your client's connection to those losses, and that was inherent in the district court's addressing of these matters. And of course, there's all the information in the PSR that the court referred to and utilized as a basis for the sentence. If you look at it that way, it would seem that the judge did quite everything he needed to do here. Again, Your Honor, he made those two findings with respect to reasonable foreseeability and knowing, but he did not make a particularized finding, again, as to the scope. I'm not following you. What more specifically did the judge need to find in your argument? Again, to the scope of the entire agreement, so for example. What do you mean by that? You just keep saying the scope. I don't know what you mean by that. He goes through all the things he did. Yes. He goes through a whole list of transferring the money. He's transferring the money. He knows it's going to the wrong places. He knows how it's coming in. He's taking advantage of the fact that it's coming to them. What's missing? What's missing, Your Honor, is what his actual role was above some ministerial role. As this court, for example, considered in Kennedy, which the government cites in its opposing brief, in Kennedy there, the co-defendants were equally culpable, equally involved. My client was just a small prong on a ministerial level. He did administrative work. The wiring and whatnot that occurred was him directed by his brother, who was the lead defendant in the case, to go to the bank, wire money, and then on the way back get us a hamburger. That's basically what he did, as well as a number of other individuals who were not indicted in the case. He was a secretary. As a matter of fact, at sentencing, the record reflects that there was evidence introduced by the defendant that he was affirmatively kept in the dark about the goings-on. Didn't your client make all these bank deposits on behalf of the conspiracy just under $10,000, $9,000, so they wouldn't hit the $10,000 threshold, and he's constantly making these deposits? I'm sorry, the question then is... Your client, during the course of the conspiracy, wasn't he making these bank deposits under $10,000? Yes, he was, at the direction of his brother. $10,000 and all that, so he would make sure he wouldn't draw attention by hitting the $10,000 threshold? Yes, Your Honor, that is clear. And he was spending money from these illegal transactions on lavish trips for himself to exotic locations and things like that. Wasn't he doing that? Yes, Your Honor. So he was doing all kinds of things. He was spending the money. He was hiding the money. He was intricately involved in the bank transactions. Now you're making him sound like he didn't know what was going on. No, Your Honor, he certainly knew what was going on, but not to the extent of $15.8 million in loss. And that's the point of the sentencing guidelines and relevant conduct, is you do not automatically give every defendant in the case the entire loss attributable to the conspiracy. It's to what he or she is culpable for. And again, the scope of the conspiracy, and maybe these are grounds to justify the scope of the conspiracy, but my point simply is this, that the district court never made that finding on the record. Isn't that basically, I mean, in effect he says he's the CEO, and although the defense argued it was a name only, he undoubtedly was responsible for the banking activities. He knew the money's fraudulent. Defendant's involvement was critical and material to the success of the conspiracy. The crimes could not have been committed without his acts and knowledgeable participation. And he was more than just a bystander. When you're handling all the money, you're in deep. Then he says, we heard from Ms. Owens, and she talked about how he was pushed around by the brother and everything, but she didn't know the extent of his involvement and what he actually did. So he's sort of rejecting that, that he's in the dark. It tends to me he doesn't carry a lot of weight. Your Honor, if I may, I think there what the court made the finding on was that he couldn't put his head in the sand, that this was all reasonably foreseeable to him. And that very well may be, but for purposes of today and for purposes of the sentencing guidelines, that is a secondary finding to a finding of what the particularized facts were, and a finding specifically to the scope of the agreement. That is what is so critical. And this is a cause for confusion across the courts nationwide, which is why the commission decided to clarify that. And now notes in the sentencing guidelines that go into effect on November 1 that even if it's reasonably foreseeable, even if the defendant knows about it, if it's not within the scope. Okay, what if the scope of the conspiracy is an operation, a procedure, and from this particular person's standpoint, he doesn't know the exact numbers, but the more the merrier, and let's just keep raking it in and taking advantage of it. No, he doesn't know it's 15 million, but he knows what's happening, and he's helping it happen. Well, as the Seventh Circuit said, Your Honor, and I believe I'm out of time, with respect to mitigating role, playing a necessary role in a conspiracy does not definitively prevent someone from receiving a minor role adjustment. So even having, the point simply is having a necessary role. I'm asking you a different question on scope of conspiracy. If you know everything that's going on, and you're participating and helping and you're happy it's going on, do you need to know the numbers? You don't need to know the numbers, but my client did not know everything that was going on here. He just handled the transactions. All right, we'll have you rebuttal. May it please the Court. My name is Dan Ranke. I represent the government in this appeal. In order for a sentence to be procedurally incorrect, it has to be based on clearly erroneous facts. The judge here thoroughly went through all... Does the judge make a finding on the scope of the conspiracy? Does the judge say, look, I believe that you were in on the whole thing? Yes. Yes, he did. The judge made a finding that actually not only did he think he was in on the whole thing, but that the conspiracy couldn't have proceeded without him. Well, that's different. Not being able to proceed without him means that he did something that was crucial. It doesn't mean that he knew the whole scope. The judge found that he did know the whole scope just by virtue of the fact that he handled both bank accounts for CDL and I3. He did all the wire transfers. He actually spoke with investors, sending them their interest payments, their purported interest payments. It wasn't just based on reasonable foreseeability. It was actually based on his direct actual knowledge and participation in the scheme. He wasn't just... They make the comparison to a drug courier. He's hardly a drug courier. He's sharing in the profits. He's controlling the bank accounts. He's communicating with investors. He's issuing checks to himself and his co-conspirators. He's opening nightclubs in South America. I mean, the fact... And the judge took all that into account when the judge found that this wasn't just based on his reasonably foreseeable losses. This was based on his actual knowledge. He actually took a $1 million check at one point and tried to deposit it in the bank. For him to argue that he's only responsible for $120,000, which was his salary and some expenses, is really not supported by the record. And that's really what the district court, when it went through all the factors and all the things that it felt Mr. Harris was aware of and participated in, that the judge did make the finding, the required finding. There's other evidence that the judge considered. Mr. Keelan Harris was included in emails that created CDL. He was actually CEO of i3. He was responsible for banking for both companies. He knew that the money was being fraudulently obtained and he dispersed it to Karen Starr and his brother and himself. And he knew it was investor money. It wasn't supposed to be going to them to pay their personal expenses. These are all things that the court considered. And when it made the findings that he was responsible for the entire $15 million loss, as well as more than 250 victims. He was aware and had actual knowledge that these victims were suffering irreparable monetary harm by his actions and the actions of his brother and Karen Starr. He received a sentence of 120 months. I like to go on to the disparate sentencing argument. His brother, Kevin, received an 87-month sentence. And Kevin Harris solicited, and this is part of Keelan's argument, is that he didn't solicit the investors. That's one of the main things he uses to try and say that he was more of an administrative person. And that's true, he didn't solicit investors. But given everything else that he did and that the judge focused on, that's why the judge – his brother received a lesser sentence, an 87-month sentence, because their roles were different. Even though the brother solicited investors, the brother cooperated right from the beginning. The brother received a substantial assistance reduction actually due to his cooperation. The brother had a lesser criminal history. Keelan had a criminal history four, which also included some financial fraud cases, which the judge found significant and placed a certain amount of weight on that because he acknowledged that Keelan had done this before. So the sentences – the fact that the sentences – the brother, even though he solicited investors, received a lesser sentence is not a disparate sentencing or disproportionate sentencing, given Keelan Harris's activity and criminal history. If there are no further questions, I would ask this court to affirm the sentence of the district court. All right. Okay. Thank you. Your Honors, I direct your attention to page 34 of the government's brief, where they set out from the sentencing hearing Judge Boyko's finding that the government contends – refers to the scope of the relevant conduct. And I just want to point this out to the court. This is Judge Boyko. As far as reasonable foreseeability, Mr. Keelan Harris cannot bury his head as to what is happening. There was many red flags here. He simply cannot go in doing what he was doing with the money. Just jumping down, it's virtually impossible for the defendant to escape reasonable foreseeability when he did all the wire transfers, et cetera. There was no reason to doubt, and it doesn't matter that there's different levels of involvement between Kevin and Keelan. Each had a fundamental, material, and knowledgeable role in this conspiracy. Your Honors, you will have the opportunity to review the record, and you will find nowhere in the record that the district court made a finding, a particularized finding, as to the scope of the agreement that my client engaged in. At most, what the court does state is it doesn't matter. It doesn't matter the different levels, but it does. It does matter. That's what the guidelines say. That's what this court has said consistently for the last 15 years. Your Honors, just in my remaining minute, this argument also holds for the number of victims. In order for the court to have found that there were 308 victims here, the court also must have had to make a particularized finding as to the scope of the jointly undertaken criminal activity to which Mr. Harris agreed. There was no finding as to the mitigating role adjustment. Just as the court failed to make a finding as to the scope, the court also failed to make a finding as to the mitigating role adjustment. We argued at sentencing, or in our sentencing memorandum, that Mr. Harris qualified for the 3B1.2 adjustment for minimal role. The court made no finding with respect to that. According to this court's precedent, United States v. Gabinsky, 561 F. 3rd 467, 2009, judges are required to both consider non-frivolous arguments and explain any basis for any rejection. So the court here, even if the court at most considered it, there was no explanation for why there was a rejection as to the mitigating role. Finally, the substantive unreasonableness argument. The government has contended that a 120-month sentence is substantively reasonable. We, of course, disagree. We presented the district court with numerous statistical evidence that this court has found useful in other cases, or at least required. I cite the United States v. Elmore, 743 F. 3rd 1068. Also, the district court failed to consider the statistical evidence that we presented with respect to the substantive reasonableness of the sentence. With that, Your Honors, thank you very much. Thank you, and the case is submitted.